**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

COREY ALLAN DONALDSON,

       Plaintiff,

   v.

TONY NORMAND,

       Defendant.

CIVIL ACTION NO.: 5:18-cv-7

## ORDER AND REPORT AND RECOMMENDATION

Before the Court are Plaintiff's Motion for Summary Judgment, doc. 124, Defendant's Motion for Summary Judgment, doc. 139, and other various Motions Plaintiff has filed. For the reasons set forth below, I:

(1)    **DENY** Plaintiff's Motion for Reconsideration Under Rule 60. Doc. 154.

(2)    **DENY** Plaintiff's Motion for Reconsideration Under Rule 59(e). Doc. 156.

(3)    **DENY** Plaintiff's Motion for Leave to File an Out of Time Response. Doc. 155.

(4)    **DENY** Plaintiff's Motion to Strike and Motion to Vacate. Doc. 160.[1]

Also, I **RECOMMEND** the Court:

(1)    **DENY** Plaintiff's Motion for Summary Judgment. Doc. 124.

(2)    **DENY** Plaintiff's Motion to Grant Summary Judgment Based on Federal Rule of Civil Procedure 56(e). Doc. 136.

(3)    **GRANT** Defendant's construed Motion to Dismiss. Doc. 139.

---

[1]    Plaintiff also filed a "Motion to Strike" Defendant's Response to Plaintiff's Motion to Strike and Motion to Vacate. Doc. 163. However, this filing is more accurately construed as Plaintiff's Reply offered in support of his original Motion to Strike. According, I **DIRECT** the Clerk of Court to **TERMINATE** the "Motion" at Document Number 163.

Finally, I **RECOMMEND** the Court **DISMISS without prejudice** any claims against

Defendant, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment,

and **DENY** Plaintiff *in forma pauperis* status on appeal.

## INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, a former federal prisoner now residing in Australia, brought this action six years

ago under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388

(1971).  Doc. 1.  Plaintiff's claims are based largely on retaliation he claims to have experienced

while he was incarcerated at D. Ray James Correctional Facility ("D. Ray James") in Folkston,

Georgia, based on a letter he sent to the New York Stock Exchange.  Id. at 6–14.  Specifically,

Plaintiff alleges his mail was obstructed and destroyed and he was placed isolation, deprived of

access to grievance procedures, deprived of access to water and other privileges, and transferred

from D. Ray James to Rivers Correctional Institution ("Rivers CI") as punishment.  Id.  at 6–14.

Plaintiff initially filed this action in the Eastern District of North Carolina.  Doc. 1.

Plaintiff amended his Complaint with leave from that court on June 5, 2017.  Doc. 18.  The

District Court for the Eastern District of North Carolina conducted a frivolity review of

Plaintiff's Complaint and dismissed The GEO Group because it is a private corporation and,

therefore, exempt from suit under Bivens.  Doc. 20.  Defendants Johns and Tripp filed a motion

for judgment on the pleadings, which the court granted.  Doc. 54 at 3–4.  Defendant Normand

filed a motion to dismiss, which the court denied without prejudice.  Id. at 5.  The District Court

for the Eastern District of North Carolina then transferred Plaintiff's Bivens claim against

Defendant Normand to this Court on February 2, 2018, finding it was a more convenient forum.

Id.

Defendant Normand filed a motion to dismiss with this Court on April 13, 2018. Doc. 65.  The Court granted Defendant's motion to dismiss because Plaintiff failed to allege a physical injury and requested only punitive damages.  Doc. 100 at 3–4.  However, on appeal, the Eleventh Circuit vacated the dismissal and remanded in light of its decision in Hoever v. Marks, 993 F.3d 1353 (11th Cir. 2021), which made clear a plaintiff subject to the Prison Litigation Reform Act ("PLRA") can still recover punitive damages, even without showing any physical injury.  On May 26, 2021, the Eleventh Circuit sent Plaintiff's case back to this Court for further consideration in light of Hoever.

Plaintiff now argues the Eleventh Circuit's remand entitles him to judgment in his favor. As explained below, Plaintiff is incorrect.  The Eleventh Circuit's remand merely requires the Court to proceed with resolution of this case in light of the conclusion in Hoever, namely, the lack of a physical injury does not support complete dismissal of Plaintiff's claims.  The Eleventh Circuit's remand does not otherwise impact any issue in this case, and it certainly does not require this Court to enter judgment in Plaintiff's favor.

Additionally, Defendant seeks summary judgment his favor based on Plaintiff's failure to exhaust administrative remedies.  Defendant raised this argument before, but the Court rejected it based on the record before the Court at that time.  Defendant is allowed to raise the exhaustion argument again, and this time Defendant has shown Plaintiff failed to exhaust available administrative remedies, and, consequently, Defendant is entitled to judgment in his favor.

I.      **Plaintiff's Motion for Summary Judgment**

Plaintiff's Motion for Summary Judgment is primarily based on a misunderstanding of the effect of the Eleventh Circuit's mandate in this case.  This Court originally dismissed Plaintiff's claims because he did not plead any physical injury.  Doc. 100 at 4.  After this Court's

dismissal, the Eleventh Circuit decided, in a different case, no physical injuries were needed to pursue a claim like Plaintiff's claim.  Doc. 112 at 2.  Accordingly, the Eleventh Circuit decided in this case to vacate this Court's Order of dismissal and remand this case for further consideration.  Id.  The Eleventh Circuit also issued a corresponding mandate to this Court. Doc. 114.

To "vacate" means to "nullify or cancel; make void; invalidate."  *Vacate*, Black's Law Dictionary (11th ed. 2019).  A "remand" is an "act or an insistence of sending something (such as a case, claim, or person) back for further action."  *Remand*, Id.  A court appeals issues a "mandate" to "direct[] a lower court to take a specified action."  *Mandate*, Id. see also Fed. R. App. P. 41.  Therefore, the Eleventh Circuit nullified or canceled this Court's decision that Plaintiff is required to plead a physical injury, sent the case back to this Court, and directed this Court to reconsider the dismissal of Plaintiff's claims based on a lack of physical injury.  To be sure, the Hoever decision means Plaintiff's claims in this action should not be dismissed in their entirety based solely on the lack of a physical injury.

Plaintiff, however, misconstrues the Eleventh Circuit's remand in this case.  Plaintiff argues the remand means he is entitled to judgment in his favor, that is, Plaintiff wins, Defendant loses, and Plaintiff gets his punitive damages.  Plaintiff insists "[t]he district court cannot again dismiss this claim for relief since the Panel VACATED the district court's dismissal . . . ." Doc. 124 at 9.  Plaintiff is incorrect.  The Eleventh Circuit's mandate in this case was based on one issue: lack of physical injury.  Doc. 112 at 2.  Nowhere in its decision did the Eleventh Circuit unwind any other prior rulings in this case, require a judgment in favor of either party, or foreclose any other issues or arguments to be made by either party.  Rather, this case is essentially back in the same place it was before this Court dismissed Plaintiff's claims the first

time.  The only difference mandated by the Eleventh Circuit is this Court may not dismiss Plaintiff's claims altogether simply because he failed to show a physical injury (and the Court will not dismiss Plaintiff's claims completely on that basis).  This Court can still dismiss the case for any other lawful reason, but not that one.  This Court will abide by the Eleventh Circuit's decision.  However, the Eleventh Circuit's decision, remand, vacatur, and mandate do not, on their own, now entitle Plaintiff to summary judgment.

Plaintiff also argues he is entitled to summary judgment because Defendant effectively admitted to Plaintiff's factual allegations by filing an untimely Answer.  Doc. 124 at 10–14.  Plaintiff characterizes Defendants' Answer as a "second Answer" and Defendant's first motion to dismiss, filed in the Eastern District of North Carolina before this case was transferred, as Defendant's original Answer.  Plaintiff is wrong.  The Court has already determined Defendant's Answer was timely and procedurally proper.  Doc. 97 at 5–7.  Defendant admits to only three facts in that Answer: (1) Defendant's work address; (2) Plaintiff was transferred from D. Ray James to Rivers CI; and (3) Defendant was "generally aware" of Plaintiff's hunger strike at D. Ray James.  Doc. 72 at 2–3, 5.  Nothing in Defendant's Answer (and nothing about the timing of the Answer) entitles Plaintiff to summary judgment.

To the extent Plaintiff argues Defendant admitted to any facts in response to Plaintiff's Motion for Summary Judgment, Plaintiff is incorrect again.  Plaintiff failed to allege any facts in his Motion for Summary Judgment.  Plaintiff did not file a statement of material facts ("SMF") in support of his Motion for Summary Judgment.  Doc. 124.  This Court's Local Rule 56.1 requires a party moving for summary judgment to include "a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof."  Local R. 56.1.  Plaintiff filed a Supplement to

Motion for Summary Judgment, but it contains no separate SMF in accordance with the Rules. Doc. 130.  Although Plaintiff's Supplement announces a "Short and Plain Statement," id. at 1, mimicking the requirements language in Local Rule 56.1, neither document contains any factual claims or citations to the record, as required by Federal Rule of Civil Procedure 56(c) or Local Rule 56.1.

The language most resembling factual allegations are found on page 16 of Plaintiff's Motion for Summary Judgment:

> Zero examination of uncontested facts occurred by the District Court the 15-day retaliation crime scene, comprising sadistic assault by unlawful restraint in chains, unlawful force, unlawful confinement, witness tampering, and pain inflicted leading up to and during the execution of the violent retaliation kidnapping in the back of a van across three States while hogtied in chains after a 15-day hunger strike.

Doc. 124 at 16.  Despite the rhetorical flourishes, these statements are conclusory, generalized statements, not particular facts describing exactly what Defendant did to violate Plaintiff's rights, and seemingly only describe Plaintiff's transport from one BOP facility to another.  More importantly, none of these statements—or anything else in Plaintiff's Motion for Summary Judgment—is supported by citations to the record.  A party may not rely on such unsupported allegations as facts to support a motion for summary judgment.  Fed. R. Civ. P. 56(c); Local R. 56.1.

Defendant argues the Court should deny Plaintiff's summary judgment motion because it does not comply with Local Rule 56.1, which requires motions for summary judgment to be accompanied by a separate, short, and concise statement of material facts.  Doc. 129 at 11–12. As noted above, Local Rule 56.1 provides, "Upon any motion for summary judgment . . . , in addition to the brief, there shall be annexed to the motion a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute[.]"  To be sure,

Plaintiff's Motion is due to be denied on this basis alone.  See Brandon v. Lockheed Martin Aeronautical Sys., 393 F. Supp. 2d 1341, 1348 (N.D. Ga. 2005) (holding pro se litigant was required to adhere to the procedural requirements of submitting a separate statement of material facts); Daker v. Owens, No. 6:14-CV-47, 2021 WL 1606052, at *2 (S.D. Ga. Feb. 9, 2021), *report and recommendation adopted*, 2021 WL 983136 (S.D. Ga. Mar. 16, 2021) (denying a pro se plaintiff's motion for summary judgment because his motion did not comply with the Court's Local Rules); Jackson v. Oral, No. 4:19-CV-88, 2020 WL 1081700, at *2 (N.D. Fla. Jan. 13, 2020), *report and recommendation adopted sub nom.* Jackson v. Red Hills Oral & Facial Surgery, P.A., 2020 WL 1078760 (N.D. Fla. Mar. 6, 2020) ("Plaintiff's failure to comply with [the court's local rules] is itself a sufficient reason to deny Plaintiff's motion for partial summary judgment.").  And even if Plaintiff's Motion were compliant with the Local Rules, Plaintiff's legal arguments completely fail as a matter of law because nothing about the Eleventh Circuit's mandate in this case requires judgment in his favor.  Accordingly, I **RECOMMEND** the Court **DENY** Plaintiff's Motion for Summary Judgment.  Doc. 124.

II.   **Plaintiff's Motion to Grant Summary Judgment Based on Federal Rule of Civil Procedure 56(e)**

Instead of filing a reply brief to Defendant's Response to Plaintiff's Motion for Summary Judgment, Plaintiff filed another Motion, arguing Defendant failed to "address or deny the facts asserted in the Motion for Summary Judgment."  Doc. 136 at 3.  However, as explained above, Plaintiff does not properly assert any facts at all in his Motion for Summary Judgment.  Instead, he brings only legal and procedural arguments.  Nevertheless, Plaintiff argues Defendant failed to meet those arguments, so Plaintiff moves the Court to grant him summary judgment under Federal Rule of Civil Procedure 56(e) or, in the alternative, order the parties to a settlement

conference.  Id. at 9.  Plaintiff also moves the Court to sanction Defendant's counsel "to address misconduct and false representations."  Id.

If the non-movant "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2)–(3).  The court may also "issue any other appropriate order" when it finds a party fails to address an assertion of fact.  Fed. R. Civ. P. 56(e)(4).  However, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."  United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004).  "At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment" and "must ensure that the motion itself is supported by evidentiary materials."  Id. at 1101–02.  Further, orders under Rule 56(e)(4) "should be designed to encourage proper presentation of the record."  Fed. R. Civ. P. 56(e)(4) advisory committee's note to 2010 amendment.

Plaintiff's Motion is meritless because he failed to make any assertions of fact in his original Motion for Summary Judgment for Defendant to address.  As described above, Plaintiff did not submit a statement of material facts with his Motion for Summary Judgment, as required.  Doc. 124.  Instead, Plaintiff made only conclusory allegations, erroneous arguments about the effect of the Eleventh Circuit's mandate in this case, and erroneous arguments about the sufficiency of Defendant's Answer.  Id.  Defendant appropriately pointed out Plaintiff's deficiencies in his Response.  Doc. 129 at 11–12.  Plaintiff demands sanctions on Defendant for bringing these deficiencies to the Court's attention, insisting Plaintiff's "Supplement to Motion

for Summary Judgment," doc. 130, did indeed include a "short and plain statement."  Doc. 136 at

3.  However, Plaintiff's "short and plain statement" does not meet the requirements of Federal

Rule of Civil Procedure 56(c) or Local Rule 56.1.  Thus, Defendant's Response brief was

appropriate, and Plaintiff is entitled to no relief under Rule 56(e).

Because Defendant filed a sufficient response to Plaintiff's Motion for Summary

Judgment, I **RECOMMEND** the Court **DENY** Plaintiff's Motion to Grant Summary Judgment

Based on Federal Rule of Civil Procedure 56(e).  Doc. 136.

### III.    Defendant's Motion to Dismiss

Defendant has also moved for summary judgment based on Plaintiff's failure to exhaust

administrative remedies.  As explained below, Defendant's Motion for Summary Judgment must

be construed as a Motion to Dismiss, and the Court should grant Defendant's Motion.

#### A.    Treatment of Defendant's Exhaustion Defense

In his Motion for Summary Judgment, Defendant argues dismissal is appropriate because

Plaintiff failed to exhaust his administrative remedies.  Doc. 139 at 7–10.  In the Eleventh

Circuit, exhaustion of administrative remedies is a matter in abatement that generally does not

address the merits of the case.  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); see also

Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).  Thus, the exhaustion defense "is not

ordinarily the proper subject for a summary judgment" but instead "should be raised in a motion

to dismiss, or be treated as such if raised in a motion for summary judgment."  Bryant, 530 F.3d

at 1374–75 (citations omitted).  Because the defendant must raise exhaustion in a motion to

dismiss, the Eleventh Circuit treats failure to exhaust as an unenumerated defense pursuant to

Federal Rule of Civil Procedure 12(b).  Id. at 1375 (holding "exhaustion should be decided on a

Rule 12(b) motion to dismiss" even though "motions to dismiss for failure to exhaust are not

expressly mentioned in Rule 12(b)").  For this reason, I construe this portion of Defendant's Motion for Summary Judgment as a Rule 12(b) Motion to Dismiss for failure to exhaust administrative remedies.

Plaintiff argues Defendant is barred from bringing a failure to exhaust defense because Defendant asserted that defense previously, the Court denied it, and Defendant should not be allowed to now amend, supplement, or bring this defense again.  Doc. 142 at 2–4.  Plaintiff correctly points out Defendant raised the failure to exhaust argument in two prior motions to dismiss.  See Docs. 36, 65.  Defendant filed the first motion to dismiss in the Eastern District of North Carolina.  Doc. 36.  That court did not consider Defendant's failure to exhaust defense, and instead, denied the first motion to dismiss without prejudice because that court transferred the case to this Court.  Doc. 54.  Defendant then filed a second motion to dismiss in this Court.  Doc. 65.  The Court denied Defendant's failure to exhaust defense, although it granted Defendant's motion to dismiss on other grounds.  Doc. 97.  The Court denied Defendant's failure to exhaust defense because "[t]he record [was] not sufficiently developed to allow the Court to make any specific factual findings on disputed issues."  Id. at 13.  However, the Court expressly stated, "Should evidence later be produced that contradict[s] Plaintiff's allegations, the Court may revisit the issue."  Id. at 13 n.10.

Defendant is not barred from bringing the failure to exhaust defense again.  Defendant's first motion to dismiss was denied without prejudice and on unrelated grounds.  This Court denied the second motion to dismiss because the record was underdeveloped.  And it is well established a court "may consider facts outside the pleadings 'so long as . . . the parties have sufficient opportunity to develop the record.'"  Shivers v. United States, 1 F.4th 924, 935 (11th Cir. 2021) (citing Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008)).  Defendant has

now fully developed the record by producing additional evidence.  Plaintiff has had sufficient

opportunity to develop the record.  See Doc. 116 (authorizing a period of discovery after the

Court denied Defendant's second motion to dismiss).  Thus, the Court now revisits Defendant's

failure to exhaust defense.

B.     **The PLRA's Exhaustion Requirements**

Under the PLRA, an incarcerated individual must properly exhaust all available

administrative remedies—the prison's internal grievance procedures—before filing a federal

lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S.

199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the

PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to

address complaints internally before allowing the initiation of a federal case."  Whatley v.

Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting

Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive or excuse it based

on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special

the circumstances.  Ross v. Blake, 578 U.S. 632, 639 (2016) (finding the PLRA requires

exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a

court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones,

549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that

unexhausted claims cannot be brought in court.").  Courts may not consider the adequacy or

futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d

1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or

needless does not excuse the exhaustion requirement).  Rather, courts may only determine

whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other procedural rules.  Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)).  An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit.  Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

To properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process.  Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga.

Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### C.    Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 638; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded that "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates

cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 643–44. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 648; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.;

see also Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018).  This

prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-

plaintiff's failure to exhaust.  Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing

Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824.  "The court should dismiss [the action] if

the facts as stated by the prisoner show a failure to exhaust."  Abram, 759 F. App'x at 860

(quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to

judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

    "If the complaint is not subject to dismissal at the first step, where the plaintiff's

allegations are assumed to be true, the court then proceeds to make specific findings in order to

resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082; see also

Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is]

permitted to make factual findings to resolve the issue of exhaustion.").  After resolving the

factual disputes, the court then decides whether, "based on those findings, defendants have

shown a failure to exhaust."  Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at

1209).  Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative

remedies, the court may consider evidence outside the pleadings."  Berger, 709 F. App'x at 541

n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of

Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court

may properly consider facts outside of the pleadings to resolve a factual dispute regarding

exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### D.    Applying <u>Turner</u>

#### 1.    *BOP's grievance policy.*

Defendant explains the Federal Bureau of Prisons ("BOP") provides an administrative remedy procedure, set out in 28 C.F.R. §§ 542.10–.19, which all prisoners in BOP contract facilities must follow.  Doc. 139-2 at 1.  The BOP administrative remedy procedure is a three-step process.  First, prisoners must "begin[] their grievance process locally with the Warden by using the contractor's grievance procedures.  This involves submitting written requests to staff." <u>Id.</u>  Defendant does not explain whether all "written requests" are considered grievances, and if not, how a written request is identified as a grievance. Regardless, next,

> [i]f the inmate is not satisfied with the contractor's resolution of the complaint, the inmate may appeal to the BOP Administrator of the Privatization Management Branch (BP-10), so long as the appeal involves BOP-related matters.  Examples of BOP-related matters which must be appealed through the BOP are: issues concerning classification or designation, sentence computations, reduction in sentences, removal or disallowance of good conduct time, participation in certain programs, and an inmate's eligibility for early release.

<u>Id.</u> at 1–2.  Finally, the prisoner must appeal to the BOP's Office of General Counsel.  <u>Id.</u> at 2. The BOP records administrative remedies in a computer database.  <u>Id.</u> at 2.

#### 2.    *Defendant is not entitled to dismissal under <u>Turner</u> step one.*

At step one under <u>Turner</u>, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take[] the plaintiff's version of the facts as true."  <u>Turner</u>, 541 F.3d at 1080–82.  Here, Plaintiff, in his Response, fails to address Defendant's factual allegations related to exhaustion.  Doc. 142. Instead, Plaintiff repeats the legal and procedural arguments found in his Motion for Summary

Judgment, arguing Defendant has waived his defenses, failed to deny liability, and the Eleventh Circuit's decision in this case requires judgment for Plaintiff.  As explained above, these arguments are meritless, and they do not raise disputes with the facts Defendant alleges in support of his failure to exhaust defense.  However, to give Plaintiff the full benefit of the Turner approach, the Court considers Plaintiff's factual allegations in his Amended Complaint, too. See, e.g., Butler v. Flenory, No. 5:13-CV-9, 2014 WL 4629163, at *1 (M.D. Ga. Sept. 15, 2014); Barner v. Sasser, No. 5:16-CV-319, 2018 WL 7075196, at *5 (N.D. Fla. Dec. 10, 2018), *report and recommendation adopted,* 2019 WL 251484 (N.D. Fla. Jan. 17, 2019); McKenzie v. Staten, No. 6:17-CV-83, 2020 WL 5638621, at *10 (S.D. Ga. Sept. 3, 2020), *report and recommendation adopted,* 2020 WL 5637085 (S.D. Ga. Sept. 21, 2020) (all considering allegations in the plaintiff's complaint or amended complaint at Turner step one).

Defendant alleges Plaintiff "elected not to exhaust the issues" through the required grievance process before bringing this lawsuit.  Doc. 139 at 10.  However, in his Amended Complaint, Plaintiff alleged he was denied access to file grievances.  Specifically, Plaintiff alleged Defendant personally denied Plaintiff's requests to initiate grievance procedures while he was incarcerated at D. Ray James.  Doc. 18 at 10.  Plaintiff's factual allegations contradict Defendant's allegations as to the availability of administrative remedies, so Defendant is not entitled to dismissal under step one of Turner.

### 3.      *Defendant is entitled to dismissal under Turner step two.*

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082.  Given the disputed facts described above, the Court must resolve whether the grievance and appeal process

was available to Plaintiff under Turner step two.  "[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts."  Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008).  Nevertheless, a judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies.  Bryant, 530 F.3d at 1374 (citing Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003)).  The Supreme Court has explained "discredited testimony" cannot be relied upon to resist summary judgment.  See Womack, 2008 WL 4104148 at *5 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).

This analysis begins with the burden.  Failure to exhaust is an affirmative defense which, like other affirmative defenses, puts the burden of proof squarely on defendants.  See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial).  Even when a plaintiff relies only "upon his own self-serving allegations," courts should "consider[] whether a 'reasonable juror would

undertake the suspension of disbelief necessary to credit the allegations.'"  Womack, 2008 WL 4104148, at *6 (quoting Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . .");  Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue").  Here, both parties had the opportunity to develop the record.  The Court issued a Scheduling Order on March 24, 2022, with a deadline closing discovery on July 1, 2022.  Doc. 116.  The parties participated in a telephonic status conference on June 22, 2022, and confirmed they had no issues with discovery.  Doc. 128.  In fact, during that conference and in a filed notice, Plaintiff declared he had no need for discovery.  Doc. 131.

Defendant argues Plaintiff had sufficient knowledge of and access to the required administrative remedies process.  Doc. 139 at 9–10.  As proof, Defendant provides the declaration of Kevin Littlejohn, a BOP paralegal specialist.  Doc. 139-2.  Littlejohn reviewed Plaintiff's administrative remedy filings, and Littlejohn states Plaintiff initiated many written requests but never exhausted a grievance with the BOP.  Id. at 1–2.  Plaintiff's administrative remedy filings are attached to Littlejohn's declaration, including 69 submitted written request forms, which are used to initiate grievances.  Id. at 3–79.  Littlejohn states the "voluminous nature" of Plaintiff's filings demonstrate he had sufficient access to the grievance procedures. Id. at 2.  Defendant states Plaintiff initiated a grievance related to his transfer to Rivers CI,

asking for more information about why he was transferred.[2]  Doc. 139 at 10.  The record shows Plaintiff submitted an Inmate Request to Staff form on September 15, 2016, and Plaintiff received an answer on September 23, 2016.  Doc. 139-2 at 45.  Defendant argues Plaintiff never appealed this issue as required for exhaustion, and, therefore, Plaintiff "elected not to exhaust the issues with BOP and instead proceeded to file this lawsuit . . . ."[3]  Id.

Defendant's evidence shows the grievance process was available to Plaintiff at Rivers CI, after Plaintiff was transferred there.  Defendant's proof consists largely of 69 written request forms—the first step of the grievance process—Plaintiff filed between September 16, 2013 and February 11, 2018.  Doc. 139-2 at 3–77.  Evidence of one grievance "does not necessarily refute" a plaintiff's allegation he was denied access to the grievance process on another occasion.  See Bryant, 530 F.3d at 1373.  However, the voluminous number of Plaintiff's written requests demonstrates the grievance process was generally available at the facilities where these were filed.  Nearly all the written request forms in the record were submitted at Rivers CI.  Only three of Plaintiff's written requests were submitted before he was transferred from D. Ray James to

---

[2]    Defendant characterizes this record as a "grievance," but the "Inmate Request to Staff" form does not indicate this is a grievance or anything other than a request for information.  Doc. 139-2.  However, it is unnecessary to determine whether this written request constituted a grievance to resolve Defendant's Motion.

[3]    Notably, Plaintiff filed Inmate Request to Staff forms concerning issues associated with his transfer to Rivers CI after he was transferred.  Specifically, Plaintiff filed requests relating to his property, legal materials, and inmate account funds at D. Ray James in the months following his transfer, though it does not appear he appealed any of the responses to the requests.  Doc. 139-2 at 8–11.  To be clear, these requests do not make any reference to any constitutional violation arising from the transfer or Plaintiff's treatment at D. Ray James before the transfer.  The requests do, however, demonstrate Plaintiff had access to the administrative remedies procedures at Rivers CI, he knew how to use it, and he even raised claims about D. Ray James and his transfer through that procedure.

Rivers CI on March 11, 2015.  Plaintiff submitted one written request on September 16, 2013, and two written requests on November 6, 2014.  Doc. 139-2 at 4–7.

Defendant has not shown the grievance process was available to Plaintiff at D. Ray James during the relevant period—namely, the short window between February 24, 2015 (when Plaintiff commenced his hunger strike) and March 11, 2015 (when Plaintiff was transferred to Rivers CI).  Defendant provides no record of any grievances or written requests Plaintiff submitted at D. Ray James during that window.  And this is the period during which Plaintiff alleges Defendant personally denied him access to grievance procedures.  Doc. 18 at 8–10.  It was also during this period Plaintiff alleges he was "placed in the hole, denied . . . shower, shave, toothpaste, toothbrush, deodorant, telephone, legal files, and even water was confiscated" in retaliation for writing a letter to the New York Stock Exchange and commencing a hunger strike. Id. at 8, 16–17.

Even if no grievance procedures were available to Plaintiff at D. Ray James, Plaintiff still could have pursued and exhausted his administrative remedies by filing the appropriate grievances at Rivers CI after the transfer.  In Bryant, the Eleventh Circuit reviewed a similar issue where a prisoner alleged officials at Rogers State Prison ("RSP") beat him and denied him access to grievance procedures between August and December of 2003.  530 F.3d at 1371.  In January 2004, the prisoner was transferred to Georgia State Prison ("GSP"), where he had access to grievance procedures.  Id. at 1371–73.  The court held the prisoner failed to exhaust his administrative procedures by failing to submit a grievance at GSP about the beating at RSP, even though the grievance would have been untimely.

Here, Defendant has not refuted Plaintiff's allegations about being denied access to grievance procedures at D. Ray James between February 24, 2015 and March 11, 2015.  Instead,

Defendant contends Plaintiff could have pursued administrative remedies at Rivers CI soon after the events giving rise to Plaintiff's claims occurred.  Based on the entire record, I find Defendant has shown Plaintiff had access to grievance procedures at Rivers CI beginning with his transfer there on March 11, 2015, but he failed to pursue and exhaust those procedures before filing this suit.  Notably, a key component of Plaintiff's allegations of retaliation is that Defendant unlawfully transferred Plaintiff to Rivers CI, which means Plaintiff's first opportunity to pursue administrative remedies related to that action would have been at Rivers CI.  Plaintiff did file one written request for information about his transfer once he arrived at Rivers CI, doc. 139-2 at 45, but he completely failed to pursue and exhaust the available remedies.

Ultimately, I conclude Plaintiff had access to administrative remedies at Rivers CI and he should have initiated a grievance about the alleged constitutional violations and exhausted his administrative remedies through the appropriate appeals process.  Plaintiff failed to do so.  Consequently, the Court should **GRANT** Defendant's construed Motion to Dismiss and **DISMISS without prejudice** Plaintiff's Complaint based on his failure to exhaust his administrative remedies.[4]

## IV.     Plaintiff's Rule 60 Motion for Reconsideration

Plaintiff filed a Motion invoking Federal Rules of Civil Procedure 60(b)(1), (6), and (d)(1).  Doc. 154.  Plaintiff seeks relief under these provisions from the Court's Orders denying his motion to file by email and his motion for reconsideration of the issue.  Docs. 122, 137.  The Court, on motion, recently struck Plaintiff's motion for judgment on the pleadings because it was untimely.  Doc. 152.  Plaintiff now argues the late motion demonstrates he should be permitted to file via email, showing he cannot meet the Court's deadlines.  Doc. 154 at 2 ("The court's

---

[4]      Because Plaintiff's claims are due to be dismissed for failure to exhaust his administrative remedies, the undersigned declines to address Defendant's additional summary judgment arguments.

ORDER (doc. 137) guaranteed the Plaintiff would miss deadlines[] and has caused manifest injustice.").

Rule 60(b), as relevant here, provides a court may relieve a party "from a final judgment order, or proceeding" in a limited number of circumstances, including mistake, inadvertence, surprise, or excusable neglect.  Fed. R. Civ. P. 60(b)(1).  Additionally, the catchall provision of Rule 60(b) authorizes relief from judgment based on "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Rule 60(d)(1) permits the Court to "entertain an independent action to relieve a party from a judgment, order, or proceeding."  Fed. R. Civ. P. 60(d)(1).

Rule 60(b) provides "Grounds for Relief from a *Final* Order, Judgment, or Proceeding." Fed. R. Civ. P. 60(b) (emphasis added).  Compare Fed. R. Civ. P. 60(b) with Fed. R. Civ. P. 60(a) (allowing courts to correct "mistakes arising from oversight or omission whenever one is found in a judgment, order, or other part of the record," omitting the "final" requirement).  The Orders from which Plaintiff seeks relief—the Order denying Plaintiff's motion to file by email and the Order denying his motion to reconsider that issue—were not final orders within the understanding of Rule 60.  "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  Catlin v. United States, 324 U.S. 229, 233 (1945); see also Spivey v. Royston LLC, 1:17-CV-03044, 2020 WL 13111125 (N.D. Ga. Apr. 1, 2020) ("Rule 60(b) of the Federal Rules of Civil Procedure is not the appropriate mechanism for seeking relief from a non-final interlocutory order . . . .").  Rule 60(b) does not apply here because the Court's decisions regarding Plaintiff's requests to file by email were interlocutory and not a final ruling in this case.

Even if Rule 60(b) applied to interlocutory orders, Plaintiff fails to show the Court should reconsider its decisions here.  Plaintiff contends the Court made an error of law in denying his

requests to file by email and contends his inability to file timely motions by traditional mail somehow justifies relief.  Doc. 154 at 2–3.  The definition of "mistake" in Rule 60(b)(1) includes "a judge's errors of law."  <u>Kemp v. United States</u>, 142 S. Ct. 1856, 1862–63 (2022).  However, the Court made no such errors in using its discretion to deny Plaintiff's motion to file by email and denying his motion for reconsideration.  Pro se plaintiffs may not file electronically unless allowed by court order or local rule.  Fed. R. Civ. P. 5(d)(3)(B)(i).  This District's Local Rules and Administrative Procedures prohibit non-attorneys from filing electronically.  <u>See</u> Doc. 122. Plaintiff shows no error or mistake in this determination.  Plaintiff says the high costs of mailing his motions from his home in Australia justify relief under Rule 60, considering his *in forma pauperis* status.  However, 28 U.S.C. § 1915 relieves *in forma pauperis* plaintiffs only from filing fees and certain court costs, not from mailing and postage expenses.  <u>See</u> <u>Ellison v. Consol.</u> <u>City of Augusta</u>, No. CV 116-175, 2018 WL 11319669 (S.D. Ga. Mar. 5, 2018) (denying *in forma pauperis* plaintiff free copies of court documents); <u>Porter v. Dep't of Treasury</u>, 564 F.3d 176, 180 n.3 (3d Cir. 2009) ("[T]he granting of [*in forma pauperis*] status exempts litigants from filing fees only.  It does not exempt litigants from the costs of . . . service of documents other than the complaint . . . .").

In short, Plaintiff has not shown any error or any other basis for the Court to reconsider its prior determinations Plaintiff is not, and should not be, permitted to file documents in this case by email.  For these reasons, I **DENY** Plaintiff's Motion for Reconsideration under Federal Rules of Civil Procedure 60(b) and 60(d).  Doc. 154.

## V.    Plaintiff's Rule 59(e) Motion for Reconsideration

Plaintiff filed a Motion under Federal Rule of Civil Procedure 59(e) seeking reconsideration of the Court's Order striking Plaintiff's motion for judgment on the pleadings.

Doc. 156 (seeking reconsideration of the Court's Order at Doc. 152).  The Court struck Plaintiff's motion for judgment on the pleadings because it was untimely.  Plaintiff now argues the Court's Scheduling Order set no deadline for motions for judgment on the pleadings and he had no opportunity to respond to Defendant's motion to strike.  Doc. 156 at 1.

To successfully move the Court for reconsideration under Rule 59(e), the moving party must demonstrate: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice.  Estate of Pidcock By and Through Pidcock v. Sunnyland Am., Inc., 726 F. Supp. 1322, 1333 (S.D. Ga. 1989).  To grant such a motion, the movant must "demonstrate why the court should reconsider its decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."  United States v. Battle, 272 F. Supp. 2d 1354, 1357 (N.D. Ga. 2003) (internal quotations and citations omitted).  The decision to grant a motion for reconsideration rests within the sound discretion of the district court.  Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab Servs., 225 F.3d 1208, 1216 (11th Cir. 2000).

Importantly, Rule 59(e) is not a means to "relitigate old matters, or to raise arguments or to present evidence that could have been raised prior to the entry of judgment."  Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008).  Instead, and as noted above, the movant must "demonstrate why the court should reconsider its decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."  Battle, 272 F. Supp. 2d at 1357 (internal quotations and citations omitted).  Moreover, a motion for reconsideration is not an opportunity to instruct this Court on how it "could have done . . . better the first time."  Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995) (procedural history and internal quotations omitted).

Plaintiff argues the Court erred, causing him manifest injustice, because the Court incorrectly relied on the Scheduling Order to determine Plaintiff's motion for judgment on the pleadings was untimely.  Doc. 156 at 2–6.  This argument is unconvincing.  The Scheduling Order included an August 1, 2022 deadline for "All Civil Motions (Including Daubert Motions; Excluding Motions in Limine)."  Doc. 116 at 2.  Plaintiff insists his motion for judgment on the pleadings was ruled untimely "over a deadline NOT clear in what it related to," and "[t]here is NOTHING in that discovery ORDER that clearly and unambiguously references a time limit for filing a Motion for Judgement on the Pleadings."  Doc. 156 at 2, 4.

Federal Rule of Civil Procedure 7(b) describes a motion as "[a] request for a court order." See also Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1190 (4th ed.) ("Federal Rule of Civil Procedure 7(b)(1) defines a motion as an application to the court for an order.").  Plaintiff fails to explain how a deadline for "all civil motions" does not clearly include a motion for judgment on the pleadings.  As such, the Court finds no error or manifest injustice in striking Plaintiff's motion for judgment on the pleadings for untimeliness.

Next, Plaintiff complains of manifest injustice because the Clerk of Court mistakenly docketed Defendant's motion to strike Plaintiff's motion for judgment on the pleadings as Defendant's response to Plaintiff's motion for judgment on the pleadings.  See Doc. 152 at 1 n.1. Plaintiff argues he would have filed a response to Defendant's motion to strike had the Clerk of Court docketed it correctly.  Plaintiff says he allowed the motion to strike to go unopposed only because the Court led him to believe it was a response brief.

Plaintiff is not entitled to rely on docket entries to explain the content of Defendant's filings.  Defendant's motion to strike is clearly titled "DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS."  Doc. 149 at 1. Defendant

certified service of the motion on Plaintiff, by email, on August 22, 2022. Id. at 5. Plaintiff had 37 days to review and respond to the motion to strike before the Court issued its Order. If Plaintiff had any doubt about the need for a response, he should have filed a response or sought clarification. Further, the Court did not grant Defendant's motion to strike solely on the basis of Plaintiff's lack of opposition, doc. 152 at 2, and Plaintiff has failed to show any error in the Court's conclusion his motion for judgment on the pleadings was untimely. Most importantly, Plaintiff has not described any argument or fact he would have presented in response to Defendant's motion to strike that would have changed the outcome.

Because Plaintiff has failed to demonstrate a change in controlling law, present any new evidence, or show any clear error or manifest injustice, I **DENY** Plaintiff's Motion for Reconsideration under Federal Rule of Civil Procedure Rule 59(e). Doc. 156.

**VI.    Plaintiff's Motion to File an Out of Time Response**

Plaintiff asks the Court for leave to submit a late response to Defendant's motion to strike Plaintiff's motion for judgment on the pleadings. Doc. 155. Defendant filed his motion to strike on August 22, 2022, and certified service on Plaintiff. Doc. 149. The Clerk of Court, at the time, incorrectly docketed the motion to strike as a response to Plaintiff's motion for judgment on the pleadings. See Doc. 152 at 1 n.1. The Court granted Defendant's motion to strike on September 28, 2022. Plaintiff dated the instant Motion to File an Out of Time Response on October 24, 2022, 63 days after Defendant filed his motion to strike and 26 days after the Court ruled on it. Doc. 155 at 6. Plaintiff argues his delay is excusable neglect because the Court incorrectly docketed Defendant's motion to strike Plaintiff's motion for judgment on the pleadings as Defendant's motion to strike Plaintiff's motion for judgment on the pleadings.

Doc. 155 at 1.  Plaintiff states he would have filed a timely response if Defendant's motion to strike been correctly docketed.  Id.

A court may for good cause, extend the time to answer if the request is made "on motion . . . after time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1).  When determining whether such an exception applies, the Court generally applies a four-factor test, which evaluates: "(1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on the judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith."  Ashmore v. Sec'y, Dep't of Transp., 503 F. App'x 683, 685–86 (11th Cir. 2013) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)).  Further, a court does not abuse its discretion by refusing to accept an out-of-time filing when there is no affirmative showing of excusable neglect under Federal Rule of Civil Procedure 6(b).  Mosley v. MeriStar Mgmt. Co., LLC, 137 F. App'x 248, 250 (11th Cir. 2005) (citing Useden v. Acker, 947 F.2d 1563, 1571–72 (11th Cir. 1991)).

Plaintiff's reliance on the erroneous docket description of Defendant's motion to strike is not excusable neglect.  Regardless of whether Plaintiff acted in good faith, he had no reason to rely on the docket description of Defendant's motion to strike while completely ignoring the content of the motion itself.  Defendant's motion to strike is clearly titled "DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS." Doc. 149 at 1.  Defendant certified service of the motion on Plaintiff, by email, on August 22, 2022.  Id. at 5.  Plaintiff had 37 days to review and respond to the motion to strike before the Court issued its Order but failed to do so.  Plaintiff also fails to identify any argument or fact he

would have presented in a late response to Defendant's motion to strike that would have

impacted the Court's ruling on that motion.

Because Plaintiff has failed to show excusable neglect, I **DENY** his Motion to File an Out

of Time Response.  Doc. 155.

## VII.   Plaintiff's Motion to Strike and Motion to Vacate

Plaintiff asks the Court to strike five of Defendant's motions, six of Defendant's

responses, and vacate five of the Court's Orders because Defendant did not properly serve the

related motions and responses under Federal Rule of Civil Procedure 5(b)(2).  Doc. 160.

Plaintiff complains Defendant has served motions and responses via email, but Plaintiff did not

expressly consent to this method of service.  Defendant argues Plaintiff did consent to service by

email.  Doc. 162 at 2.

Federal Rule of Civil Procedure 5 governs the service of pleadings and papers other than

the service summons, subpoena, and process.  A party may not serve motions or responses on a

person via electronic means unless the person consents to such method of service in writing.

Fed. R. Civ. P. 5(b)(2).  "The consent must be express[] and cannot be implied from conduct."

Fed. R. Civ. P. 5 advisory committee's note to 2001 amendment.  Rule 5 "seeks to insure a full

exchange of the written communications among the litigants so that each party has a copy of all

papers affecting the case."  Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1141 (4th ed.).  Courts

typically do not entertain "frivolous or technical objections based on a litigant's noncompliance"

with Rule 5.  Id.; see also Albertson v. Winner Auto., CIV.A. 01-116, 2004 WL 2435290, at *4–

5 (D. Del. Oct. 27, 2004) (declining technical reading of Rule 5, holding conduct of parties and

plaintiff's written acknowledgment of receipt estopped plaintiff from claiming ineffective

service).

Plaintiff explains he consented to service by email of only one earlier document, Defendant's motion for enlargement of time to respond to plaintiff's motion for summary judgment, but Defendant has continued email service for all motions and responses since that time.  Doc. 160 at 1–2.  Plaintiff provides a June 22, 20222 email exchange, where Defendant's counsel emailed Plaintiff a motion for enlargement of time, adding, "Please let me know if you would also like me to mail the same to you."  Plaintiff responded, "It's not necessary that you mail it.  Thank you for the upload, I appreciate it."  Id. at 3.  Plaintiff emphatically argues his email response was a one-time agreement pertaining to this one motion and not an express consent to service of all motions and response under Rule 5.

In response, Defendant also points to the June 22, 2022 email exchange, along with emails serving Plaintiff each of Defendant's motions and responses after that time.  Doc. 162-1.  Defendant submits an email from Plaintiff on October 22, 2022, asking, "I wanted to confirm service arrangements with you.  In the interests of clarity, we are both acknowledging 'service' from each other when we email each other official documents.  Do I understand that correctly?"  Doc. 162-2 at 2.  On October 24, 2022, Defendant's counsel replied, "It has also been our understanding that you prefer not to receive documents by regular mail . . . so we have been serving our documents on you by email[.]  If you would instead like to receive filed Court documents . . . by regular mail, please let me know."  Doc. 162-4 at 2.  Apparently, Plaintiff did not reply to this email.

Plaintiff has not shown ineffective service, because Defendant has sufficiently demonstrated an express agreement for service by email.  Although Plaintiff claims the initial agreement was for service of only one motion, Plaintiff's subsequent conduct and correspondences demonstrate he agreed to service of all filings via email.  For example, Plaintiff

filed responses to or otherwise acknowledged Defendant's filings for three months before filing this Motion to Strike.  See, e.g., Doc. 142 (Plaintiff's response to Defendant's motion for summary judgment); Doc. 151 (Plaintiff's response to Defendant's motion to strike); Doc. 136 (attacking the sufficiency of Defendant's response).  Plaintiff participated in all these written communications with Defendant's counsel, and Plaintiff is plainly receiving copies of all papers affecting the case, satisfying the purpose of Rule 5.

Plaintiff also filed a Motion to Strike Defendant's Response.  Doc. 163.  However, this filing is largely an attack on Defendant's Response arguments with additional arguments in support of Plaintiff's initial Motion to Strike and Motion to Vacate based on Rule 5.  Therefore, the Court construes this filing as a Reply brief.  In it, Plaintiff states Defendant's Response is false and misleading.[5]  Id. at 1.  Plaintiff also argues the Court forbid service by email in this case.  Id. at 6–7.  However, Defendant's arguments in his Response, described above, are reasonable, well-supported arguments.  Plaintiff confuses electronic filing with the Court with his agreement with Defendant to make and receive service by email, and this confusion underscores all of Plaintiff's arguments.  The Court rejected Plaintiff's requests to file documents electronically with the Court.  But the Court has not issued any rulings regarding how the parties can serve each other.

Because the parties agreed to conduct service by email, the Court **DENIES** Plaintiff's Motion to Strike Defendant's Filings and Motion to Vacate the Court's Orders.  Doc. 160.

---

[5]     Plaintiff also asks the Court to report Defendant's attorneys for criminal conduct, refer U.S. Attorney David Estes for criminal prosecution, and suspend Defendant's attorneys.  Doc. 163 at 25–26. Plaintiff has since filed an "EMERGENCY 18 USC 4 Misprision of Felony REPORT" with similar requests.  Doc. 165.  These claims have no basis whatsoever in law or fact, and the Court will not entertain them.

**VIII.   Leave to Appeal *in Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal.  <u>See</u> Fed. R. App. P. 24(a)(3) (trial court may certify an appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  <u>Busch v. County of Volusia</u>, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989); <u>Carroll v. Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  <u>Moore v. Bargstedt</u>, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting <u>Bilal v. Driver</u>, 251 F.3d 1346, 1349 (11th Cir. 2001)); <u>see also</u> <u>Brown v. United States</u>, Nos. 4:07-cv-085, 40:3-cr-001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of the parties' Motions for Summary Judgment and Responses thereto, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

**CONCLUSION**

For the reasons set forth above, I:

(1)    **DENY** Plaintiff's Motion for Reconsideration Under Rule 60.  Doc. 154.

(2)    **DENY** Plaintiff's Motion for Reconsideration Under Rule 59(e).  Doc. 156.

(3)    **DENY** Plaintiff's Motion for Leave to File an Out of Time Response.  Doc. 155.

(4)    **DENY** Plaintiff's Motion to Strike and Motion to Vacate.  Doc. 160.

Also, I **RECOMMEND** the Court:

(1)    **DENY** Plaintiff's Motion for Summary Judgment.  Doc. 124.

(2)    **DENY** Plaintiff's Motion to Grant Summary Judgment Based on Federal Rule of Civil Procedure 56(e).  Doc. 136.

(3)    **GRANT** Defendant's construed Motion to Dismiss.  Doc. 139.

Finally, I **RECOMMEND** the Court **DISMISS without prejudice** any claims against Defendant, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 8th day of February, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA